UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------x
                              :
VINAY DESHMUKH,               :
                              :
        Plaintiff,            :
                              :
v.                            :      Civil No. 3:14cv00923(AWT)
                              :
SUNOVION PHARMACEUTICALS INC. :
                              :
        Defendant.            :
                              :
------------------------------x
```

### RULING ON MOTION TO DISMISS OR TRANSFER

The plaintiff, Vinay Deshmukh, brought this action against the defendant, Sunovion Pharmaceuticals Inc. ("Sunovion"), for wrongful discharge because of the plaintiff's Indian ethnicity, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and for wrongful discharge in violation of public policy, under state common law.  The defendant has moved to dismiss the Complaint for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or, in the alternative, to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

For the reasons set forth below, the defendant's motion is being denied.

I.    FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff is a resident of Garnet Valley, Pennsylvania.
Sunovion is a company organized under the laws of the State of
Massachusetts.  It maintains its corporate headquarters in
Marlborough, Massachusetts, does business in Connecticut and
employs more than 15 employees.

Beginning in October 2010, the defendant employed the
plaintiff as a Regional Business Manager.  In this role, the
plaintiff was responsible for hiring, training and mentoring a
team of 11 Therapeutic Specialists who sold Latuda, an atypical
antipsychotic medication developed by the defendant.  The
plaintiff's sales territory included "almost all" of
Connecticut, in addition to Westchester County in New York and
parts of New York City.  (Complaint ¶ 11.)

In early 2012, the plaintiff notified a number of Sunovion
employees, including his then-supervisor, that an abnormally
high number of cash prescriptions of Latuda had been dispensed
in the Bronx, which was the territory managed by Hemal Naik, one
of the Therapeutic Specialists on the plaintiff's team.  This
"raised red flags" for the plaintiff because he believed that
the population in the Bronx was unlikely to be able to afford
the $500 per month cost of Latuda.  (Complaint ¶ 13.)

On November 29, 2012, Sunovion in-house attorney Avery
Price invited the plaintiff to the company's headquarters in

Case 3:14-cv-00923-AWT   Document 17   Filed 02/10/15   Page 3 of 14

Marlborough, Massachusetts to discuss the high number of cash prescriptions in the Bronx.  Before the meeting, Price and Sunovion's Human Resources Director required the plaintiff to sign an agreement stating that he would not reveal what transpired during the meeting.  On December 4, 2012, the plaintiff met with Price and Sunovion Vice President of Sales Chris Gish.  However, instead of asking the plaintiff what he knew about the Latuda cash prescriptions that were dispensed in the Bronx, Price and Gish "became aggressive and accusatory" and stated that because the plaintiff and Naik were both ethnically Indian, the plaintiff would "protect" Naik.  (Complaint ¶ 19.) Price and Gish also accused the plaintiff of mistreating one of his team members by drawing attention to his low sales numbers during a conference call.  Gish stated that this management style was due to Deshmukh's "culture" and that it was "an Indian thing" to "torment" people.  (Complaint ¶ 21.)  On December 13, 2012, while the plaintiff was working in Manhattan, he received a call from his supervisor and Sunovion's Human Resources Director, who terminated the plaintiff's employment with Sunovion.  In the time since the termination of his employment with the defendant, the plaintiff has been unable to find employment.

On March 4, 2014, the plaintiff filed a complaint against the defendant with the U.S. Equal Employment Opportunity

Commission ("EEOC") and the New York State Division of Human

Rights, alleging violations of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e et seq., in that the defendant

terminated his employment based on his ethnicity.  On March 26,

2014, the EEOC issued a right to sue letter with respect to

Deshmukh's claim under Title VII, finding that it was unable to

conclude that the information in the complaint established a

violation of Title VII.  On June 25, 2014, the defendant filed

the Complaint.

## II.   LEGAL STANDARD

In deciding a Rule 12(b)(3) motion to dismiss based on

improper venue, "[t]he court must take all allegations in the

complaint as true, unless contradicted by the defendants'

affidavits, and [w]hen an allegation is so challenged [a] court

may examine facts outside the complaint to determine whether

venue is proper."  Indymac Mortgage Holdings, Inc. v. Reyad, 167

F.Supp.2d 222, 237 (D. Conn. 2001) (internal quotation marks and

citation omitted).  Furthermore, "[t]he court must draw all

reasonable inferences and resolve all factual conflicts in favor

of the plaintiff," who has "the burden of showing that venue in

the forum is proper."  Id.

If the venue is not proper, the district court "shall

dismiss, or if it be in the interest of justice, transfer such

case to any district or division in which it could have been

brought."  28 U.S.C. § 1406(a).  "Whether dismissal or transfer

is appropriate lies within the sound discretion of the district

court."  Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir.

1993).

## III. DISCUSSION

### A.   Dismissal for Improper Venue

The general federal venue statute, 28 U.S.C. § 1391(b),

provides that:

> [A] civil action may be brought in (1) a judicial
> district in which any defendant resides, if all
> defendants are residents of the State in which the
> district is located; (2) a judicial district in which
> a substantial part of the events or omissions giving
> rise to the claim occurred . . . or (3) if there is no
> district in which an action may otherwise be brought
> as provided in this section, any judicial district in
> which any defendant is subject to the court's personal
> jurisdiction with respect to such action.

Id.

The defendant contends that none of the acts or omissions

giving rise to this litigation occurred in Connecticut, and

therefore the District of Connecticut is not a proper venue

pursuant to 28 U.S.C. § 1391(b).  The defendant argues that the

plaintiff's claims are premised on acts that occurred in New

York and Massachusetts: "(1) his complaint about perceived

improper use of cash prescriptions in New York, (2) allegedly

discriminatory treatment or conduct that occurred during a

meeting in Massachusetts; and/or, (3) his termination, which

-5-

occurred over the phone while he was in New York." (Defendant's Memorandum of Law in Support of its Motion to Dismiss (Doc. No. 14) ("Defendant's Memorandum") at 5.)

The plaintiff contends that the District of Connecticut meets the requirements of 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in Connecticut. (See Plaintiff's Memorandum of Law in Support of his Objection to Defendant's Motion to Dismiss Complaint or Transfer for Improper Venue (Doc. No. 15-1) ("Plaintiff's Response") at 4-6.)

However, Title VII claims such as Count One are subject to the special venue provision of Title VII, which is set forth at 42 U.S.C. § 2005e-5(f)(3). See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); Abramski v. Potter, No. 3:05 CV 224 (SRU), 2005 WL 3021926, at *2 (D. Conn. Oct. 31, 2005); Vasser v. McDonald, No. CV 14-0185 (RC), 2014 WL 5581113, at *5 (D.D.C. Nov. 4, 2014). The special venue provision of Title VII provides that:

> an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2005e–5(f)(3) (emphasis added).

The court concludes that Count One easily satisfies the venue requirements of Title VII.  Count One is a claim for wrongful termination of the plaintiff's employment because of his Indian ethnicity.  The plaintiff alleges that he worked for the defendant in Connecticut and the defendant terminated his employment.  The plaintiff also contends, and the defendant does not dispute, that his employment was "largely based in the State of Connecticut," his primary sales territory included "most of Connecticut" and he "travelled and interacted with the defendant, its employees and customers in his sales territory throughout his employment."  (Plaintiff's Response at 4-6.) Thus, as to Count One, the plaintiff has adequately alleged that he "would have worked" in this District "but for the alleged unlawful employment practice."  42 U.S.C. § 2005e–5(f)(3).

Count Two is a common law claim for wrongful discharge. Count Two is not subject to the special venue provision of Title VII.

> Federal courts have taken slightly different
> approaches to venue when confronted with the situation
> where . . . a Title VII claim is joined with [a] claim
> subject to the general venue statute, such as the
> ADEA. Some courts have ruled that such a lawsuit must
> proceed where venue exists for both claims. Other
> courts have determined venue based on the claim
> subject to the more restrictive [special venue
> provision of Title VII].

Boudouin v. Dep't of Navy, No. C 09-4958 SBA, 2010 WL 890042, at \*4 (N.D. Cal. Mar. 8, 2010) (internal citations omitted).  Under either approach, venue is proper in this District.

Where venue is based on 28 U.S.C. 1391(b)(2), district courts must "take seriously the adjective 'substantial'" in discharging their duty to "construe the venue statute strictly." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).

> [W]hen a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court should identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.  Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether significant events or omissions material to those claims have occurred in the district in question.

Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005) (internal citations and quotation marks omitted).

> Substantiality for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts.

Id. at 432-33.  Also, under the general venue statute, venue can be appropriate in more than one judicial district:

> Section 1391(b)(2) does not restrict venue to the district in which the most substantial events or omissions giving rise to a claim occurred. . . . Rather . . . § 1391(b)(2) contemplates that venue can be appropriate in more than one district and permits

> venue in multiple judicial districts as long as a
> substantial part of the underlying events took place
> in those districts.

Daniel, 428 F.3d at 432 (internal citations and quotation marks

omitted).

Here, as to the nature of Count Two, it is a claim for

wrongful discharge in violation of public policy, in retaliation

for the plaintiff's expressing concern about cash prescriptions

of Latuda in the Bronx, New York.  With respect to the events

underlying the claim, the plaintiff worked for the defendant

from October 2010 to December 2012 and, although his sales

territory included Westchester County, New York and parts of New

York City, his employment was largely based in the State of

Connecticut.  He had expressed concerns about events occurring

in the Bronx.  On the day his employment was terminated, he was

working in Manhattan when he was called by his supervisor from

corporate headquarters in Massachusetts.  Thus, while a

substantial part of the events underlying the action took place

outside the State of Connecticut, a substantial part of those

underlying events also took place in the State of Connecticut.

Because venue is proper in this District, the defendant's

motion to dismiss for improper venue is being denied.

B.      **Transfer to the Southern District of New York**

In the alternative, the defendant contends that this case
should be transferred to the Southern District of New York
pursuant to 28 U.S.C. § and 1404(a).

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where
> it might have been brought or to any district or
> division to which all parties have consented.

28 U.S.C. § 1404(a).

> In determining whether a transfer of venue pursuant to
> 28 U.S.C. § 1404(a) is appropriate, district courts
> engage in a two-part inquiry, asking: (1) whether an
> action might have been brought in the proposed
> transferee forum, and, if so, (2) whether the transfer
> promotes convenience and justice.

Costello v. Home Depot U.S.A., Inc., 888 F. Supp. 2d 258, 266
(D. Conn. 2012) (internal quotation marks and citations
omitted).  In determining whether the transfer promotes
convenience and justice, "[d]istrict courts have broad
discretion in making determinations of convenience under Section
1404(a) and notions of convenience and fairness are considered
on a case-by-case basis."  D.H. Blair & Co. v. Gottdiener, 462
F.3d 95, 106 (2d Cir. 2006).  The factors a district court is to
consider include:

> (1) the plaintiff's choice of forum, (2) the
> convenience of witnesses, (3) the location of relevant
> documents and relative ease of access to sources of
> proof, (4) the convenience of parties, (5) the locus
> of operative facts, (6) the availability of process to
> compel the attendance of unwilling witnesses, (7) the

> relative means of the parties, (8) the forum's
> familiarity with the governing law, and (9) trial
> efficiency and the interests of justice, based on the
> totality of the circumstances.

Costello, 888 F. Supp. 2d at 267 (citing D.H. Blair & Co., 462

F.3d at 106-107; Hanninen v. Fedoravitch, 583 F.Supp.2d 322, 331

(D. Conn. 2008)).  On a motion to transfer, "[t]he movant bears

the burden of establishing the propriety of transfer by a clear

and convincing showing."  Costello, 888 F. Supp. 2d at 266.

Venue in the Southern District of New York would be proper

in this case under the special venue provision of Title VII,

because the plaintiff would have worked in that District but for

the alleged unlawful employment practice, and under the general

venue statute, because a substantial part of the events

underlying the plaintiff's wrongful discharge claim took place

in that District.

The defendant argues that this case should be transferred

to the Southern District of New York because, in relevant part,

the locus of operative facts from which the claims in this case

arise is the Southern District of New York, this court will not

be able to compel witnesses in the New York City area to testify

at trial because of their distance from the courthouse, and the

median time to disposition of cases in the Southern District of

New York is 2.3 months shorter than the median time to

disposition of cases in the District of Connecticut.
(Defendant's Memorandum at 9-13).

"The locus of operative facts is an important factor to be
considered in deciding where a case should be tried. To
determine the locus of operative facts, courts look to where the
events from which the claim arises occurred." Costello v. Home
Depot U.S.A., Inc., 888 F. Supp. 2d 258, 268 (D. Conn. 2012)
(internal quotations and citations omitted).  As to Count One,
the locus of operative facts is Connecticut, where the
plaintiff's employment was largely based.  However, as to Count
Two, the locus of operative facts is the Southern District of
New York, where the alleged cash prescriptions were sold.

"A party moving for transfer on the ground of the
convenience or availability of witnesses must specify the
identity of key witnesses and the nature of their likely
testimony, and support these statements with affidavits."
Costello, 888 F. Supp. 2d at 267.  The defendant has not
specified any key witnesses in support of its position.  "A
subpoena may command a person to attend a trial, hearing, or
deposition . . . within 100 miles of where the person resides,
is employed, or regularly transacts business in person."  Fed.
R. Civ. P. 45(c)(1)(A).  The court takes judicial notice that
parts of the New York City metropolitan area are less than 100
miles from the courthouses of the Southern District of New York

but more than 100 miles from Hartford, whereas the defendant's

headquarters in Marlborough, Massachusetts is within 100 miles

of Hartford, but more than 100 miles from the Southern District

of New York.  Thus, this factor does not weigh in favor of

either district.

As to the difference between the average time to

disposition of cases in the Southern District of New York and

the District of Connecticut, the court finds that, to the extent

that such summary statistics can be said to be predictive of the

expected time to disposition of this particular case, a

difference of 2.3 months weighs, at best, only slightly in favor

of the Southern District of New York.

> In considering a motion to transfer, a district court
> ordinarily affords the plaintiff's choice of forum
> substantial weight. See In re Warrick, 70 F.3d 736,
> 741 (2d Cir.1995). When plaintiffs choose a forum that
> is not any plaintiff's home forum, that choice of
> forum is accorded considerably less weight. See
> Iragorri v. United Technologies, 274 F.3d 65, 71 (2d
> Cir.2001).

Costello, 888 F. Supp. 2d at 267.  Here, the plaintiff chose a

forum that is not his home forum, but it appears that his home

forum, the Eastern District of Pennsylvania, is not available to

him.  Thus, the court concludes that this factor weighs slightly

in favor of the plaintiff's choice, the District of Connecticut.

The parties have not addressed in their submissions the

other factors listed in Costello and the court has no basis for

-13-

evaluating them.[1]  Weighing the factors discussed above, the court concludes that the defendant has not met its burden of establishing by a clear and convincing showing that transfer of this case promotes convenience and justice.  Two of the factors are neutral factors in this case, while one weighs at best slightly in favor of transferring this case and the remaining factor weighs slightly in favor of not doing so.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Dismiss Complaint for Improper Venue or, in the Alternative, to Transfer to the Southern District of New York (Doc. No. 13) is hereby DENIED.

It is so ordered.

Dated this 10th day of February 2015, at Hartford, Connecticut.


                                        _____/s/_____
                                        Alvin W. Thompson
                                     United States District Judge

---

[1] In its reply, the defendant also contends that forum shopping played a part in the plaintiff's decision to bring this case in the District of Connecticut because Count Two is premised on Connecticut common law that has no clear corollary in New York or Massachusetts.  However, "[w]hen a federal district court sits in diversity, it generally applies the law of the state in which its sits, including that state's choice of law rules."  <u>In re Coudert Bros. LLP</u>, 673 F.3d 180, 186 (2d Cir. 2012).